UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-01106

| | |
|---|---|
| FRED NEKOUEE, individually, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| HOBBY LOBBY STORES, INC., an Oklahoma | : |
| corporation; | : |
| | : |
| Defendant. | : |
| _____ | / |

## COMPLAINT
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, as a mobility impaired individual (sometimes referred to as "Plaintiff"), hereby sues the Defendant, HOBBY LOBBY STORES, INC., an Oklahoma corporation (sometimes referred to as "Defendant"); for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.      Defendant HOBBY LOBBY STORES, INC. operates the Hobby Lobby store with an address of 4106 S. College Avenue, Fort Collins, CO 80525, in Larimer County ("Hobby Lobby").

3.       Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the Property.   The Defendant's Hobby Lobby is located in and does business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

6.      Hobby Lobby is a sales establishment.

7.      Hobby Lobby is a place of public accommodation.

8.      Defendant is responsible for complying with the obligations of the ADA.

9.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis, weak limbs, and requires the use of a wheelchair for mobility.

10.      Mr. Nekouee travels to the Longmont-Firestone-Boulder area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

11.      On his way to the mountains and sight-seeing, Fred Nekouee visited the Hobby Lobby that form the basis of this lawsuit on February 4, 2019; May 10, 2019; and March 4, 2020; and he bought goods and sought to avail himself of the goods and services at Hobby Lobby on such dates.

12.      Fred Nekouee attended a heavy equipment auction in the Longmont area on October 3, 2018; May 8, 2019; October 2, 2019; and March 4, 2020.

13.      Fred Nekouee visited Rocky Mountain National Park on October 2, 2018.

14.     Fred Nekouee also visited the Longmont, Colorado area from February 3-7, 2019.

15.     Fred Nekouee plans to return to Hobby Lobby to avail himself of the goods and services offered to the public at Hobby Lobby.

16.     The Plaintiff has definite plans to return to the area and to Hobby Lobby in late September, early October 2020.

17.     The Hobby Lobby is on the way from the heavy equipment auction and dealerships he visits to the mountains and sight-seeing.

18.     The Plaintiff likes the broad range of cards, crafts and gift items for sale at Hobby Lobby.

19.     The Plaintiff plans to return to Hobby Lobby to shop.

20.     For the reasons set forth in paragraphs 10-19 and 31, Fred Nekouee plans to return to Hobby Lobby.

21.     The Plaintiff has encountered architectural barriers at Hobby Lobby.

22.     The barriers to access that the Plaintiff encountered at the Hobby Lobby have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access Hobby Lobby, and have impaired his use of the restrooms in Hobby Lobby.

23.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

24.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

25.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

26.     On his visit to Hobby Lobby, the Plaintiff encountered excessively steep slopes of the curb ramp flares to the access ramp in front of the entrance to Hobby Lobby.

27.     The access ramp in front of the entrance to Hobby Lobby has a running slope steeper than 1:12.

28.     The Plaintiff encountered and observed barriers to access in the men's restroom in Hobby Lobby; and so, he also tried to use the women's restroom in Hobby Lobby, in which women's restroom he also encountered and observed barriers to access.

29.      The Plaintiff is deterred from visiting Hobby Lobby even though he enjoys its goods, because of the difficulties he will experience there until Hobby Lobby is made accessible to him in a wheelchair.

30.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described but not necessarily limited to the allegations in paragraph 37 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

31.     Fred Nekouee desires to visit the Property not only to avail himself of the goods and services available at Hobby Lobby but to assure himself that Hobby Lobby is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of Hobby Lobby without fear of discrimination.

32.     The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

33.     The Defendant has discriminated, and is continuing to discriminate, against the

Plaintiff in violation of the ADA by failing to, <u>inter alia</u>, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

34.    Physical conditions that exist at Hobby Lobby are accurately described in each romanette "(i)" in each lettered subparagraph of paragraph 37 below

35.    Preliminary inspections of Hobby Lobby show that violations of the ADA exist as set forth in paragraph 37 below.

36.    The violations of the ADA that Fred Nekouee personally encountered or observed at Hobby Lobby include, but are not limited to, those set forth in paragraph 37 below.

37.    At Hobby Lobby:

**PARKING**

a.  (i) In the parking lot, the parking space for disabled patrons in front of Hobby Lobby, shown in the photographs below, does not have an upright sign with the International Symbol of Accessibility.   (ii) This parking space for disabled patrons does not have an upright sign with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1.   (iii) Due to the lack of an upright sign with the International Symbol of Accessibility for this parking space, the Plaintiff had difficulty locating an accessible parking space.   (iv) The action required to install an upright sign at this parking space with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.





b.   (i) The width of the access aisle serving the van accessible parking space for disabled patrons in front of Hobby Lobby, shown in the photograph below, is less than 60 inches wide.   (ii) This access aisle is less than 60 inches wide and is only about 37 inches

wide, in violation of Federal Law 2010; ADAAG § 502.3.1.   (iii) Due to the narrow width of this access aisle, the Plaintiff had difficulty using this parking space and unloading from and back into his vehicle.   (iv) The action required to restripe this area of the parking lot to provide for an access aisle of proper width is easily accomplishable and able to be carried out without much difficult or expense.



c.   (i) The width of the access aisle serving the parking space for disabled patrons in front of Hobby Lobby, shown in the photograph below, is less than 60 inches wide.   (ii) This access aisle is less than 60 inches wide and is only about 35 inches wide, in violation of Federal Law 2010; ADAAG § 502.3.1.   (iii) Due to the narrow width of this access aisle, the Plaintiff had difficulty using this parking space and unloading from and back into his vehicle.   (iv) The action required to restripe this area of the parking lot to provide for an access aisle of proper width is easily accomplishable and able to be carried out without much difficult or expense.



d.    (i) The running slope of the access ramp in front of Hobby Lobby, shown in the photograph below, is steeper than 1:12 and steeper than 1:10.   (ii) The running slope of this access ramp in front of Hobby Lobby is steeper than 1:12 and steeper than 1:10, in violation of Federal Law 2010, ADAAG § 405.2.   (iii) Due to the steep running slope of this access ramp, the Plaintiff had difficulty ascending and descending this ramp in his wheelchair and it made his wheelchair unstable.   (iv) The action required to reduce the running slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.



e.   (i) The slopes of the curb ramp flares for the access ramp to the entrance to Hobby Lobby are steeper than 1:10.   (ii) The slopes of the curb ramp flares for the access ramp to the entrance to Hobby Lobby are steeper than 1:10 and are steeper than about 15%, in violation of Federal Law 2010; ADAAG § 406.3.   (iii) Due to the slopes of these curb ramp flares or sides, the Plaintiff had to maneuver his wheelchair away from these curb ramp flares to avoid tipping his wheelchair.   (iv) The action required to reduce the slopes of these curb ramp flares is easily accomplishable and able to be carried out without much difficulty or expense.

f.   (i) A portion of the right section (oriented as one faces the entrance to Hobby Lobby from the parking lot) of the transition from the access aisle to the access ramp in front of the entrance to Hobby Lobby contains a change of level of greater than 0.5 inches. (ii) This change of level is greater than 0.5 inches, in violation of Federal Law 2010;

ADAAG §§ 303.3 and 405.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this change of level and it stopped the forward movement of his wheelchair and made his wheelchair unstable.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN HOBBY LOBBY**

g.   (i) The force needed to open the entrance door to the men's restroom in Hobby Lobby is greater than 5 pounds.   (ii) The force needed to open the entrance door to the men's restroom in Hobby Lobby is about 10 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff had difficulty opening this door to enter the men's restroom in Hobby Lobby.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

h.   (i) The entrance to the men's restroom in Hobby Lobby does not have signage with the   International Symbol of Accessibility.   (ii) The entrance to the men's restroom does not have signage with the International Symbol of Accessibility, as shown in the photograph below, in violation of Federal Law 2010; ADAAG § 703.7.2.1.   (iii) Due to the lack of signage with the International Symbol of Accessibility, the Plaintiff is deterred from shopping at Hobby Lobby as the lack of such signage constitutes a barrier to access. Without such signage it appears that there is no accessible restroom for the disabled.   (iv) The action required to install a sign with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.



i.    (i) In the men's restroom in Hobby Lobby, a door pull is not provided on both sides of the door near the latch to the accessible toilet compartment.   (ii) A door pull is not provided on both sides of the door near the latch to the accessible toilet compartment, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull on both sides of the door to the accessible toilet compartment, the Plaintiff had difficulty operating the door.   (iv) The action required to install a door pull on both sides of the door is easily accomplishable and able to be carried out without much difficulty or expense.

j.    (i) In the men's restroom in Hobby Lobby, the water supply and drain pipes under the sinks are not insulated.   (ii) These water supply and drain pipes under these sinks are not insulated, in violation of Federal Law 2010; ADAAG § 606.5.   (iii) Due to the lack of

insulation on these pipes under these sinks, the Plaintiff risked skin burns and injury to his legs when he used these sinks.   (iv) The action required to insulate these water supply and drain pipes under these sinks is easily accomplishable and able to be carried out without much difficulty or expense.

k.      (i) In the men's restroom in Hobby Lobby, the operation of the controls for the faucets to one of the sinks, shown in the photograph below, requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of the controls for these faucets to one of the sinks requires tight grasping, pinching or twisting of the wrist, in violation of Federal Law 2010; ADAAG §§ 606.4 and 309.4.   (iii) The Plaintiff tried but could not operate these faucet controls with a closed fist or loose grip.   (iv) The action required to replace these faucet controls is easily accomplishable and able to be carried out without much difficulty or expense.



l.    (i) In the accessible toilet compartment in the men's restroom in Hobby Lobby, the centerline of the where the toilet paper is dispensed from the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of where the toilet paper is dispensed from this toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of where toilet paper is dispensed, the Plaintiff could not reach toilet paper from this dispenser from a normal sitting position on the toilet.   (iv) The action required to install a dispenser so that the centerline of where the

toilet paper is dispensed is between 7 and 9 inches from the front of the toilet is easily accomplishable and able to be carried out without much difficulty or expense.

m.    (i) In the men's restroom in Hobby Lobby, the coat hook in the accessible toilet compartment is higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor and is about 60 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff tried but could not use this coat hook to hang up an article of his clothing from his wheelchair due to the height of this coat hook above the floor.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

**WOMEN'S RESTROOM IN HOBBY LOBBY**

n.    (i) The force needed to open the entrance door to the women's restroom in Hobby Lobby is greater than 5 pounds.   (ii) The force needed to open the entrance door to the women's restroom in Hobby Lobby is about 9 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff had difficulty opening this door to enter the women's restroom in Hobby Lobby.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

o.    (i) The entrance to the women's restroom in Hobby Lobby does not have signage with the   International Symbol of Accessibility.   (ii) The entrance to the women's restroom does not have signage with the International Symbol of Accessibility, as shown

in the photograph below, in violation of Federal Law 2010; ADAAG § 703.7.2.1.   (iii) Due to the lack of signage with the International Symbol of Accessibility, the Plaintiff is deterred from shopping at Hobby Lobby as the lack of such signage constitutes a barrier to access.   Without such signage it appears that there is no accessible restroom for the disabled.   (iv) The action required to install a sign with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.



p.      (i) In the women's restroom in Hobby Lobby, the accessible toilet compartment door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than 18 inches.   (ii) This door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than 18 inches and is only about 9 inches, in violation of Federal Law 2010; ADAAG § 404.2.4.   (iii) Due to

this lack of pull side maneuvering clearance, the Plaintiff required assistance to enter this compartment restroom in his wheelchair.   (iv) The action required to reconfigure this toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

q.   (i) In the women's restroom in Hobby Lobby, a door pull is not provided on both sides of the door near the latch to the accessible toilet compartment.   (ii) A door pull is not provided on both sides of the door near the latch to the accessible toilet compartment, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull on both sides of the door to the accessible toilet compartment, the Plaintiff had difficulty operating the door.   (iv) The action required to install a door pull on both sides of the door is easily accomplishable and able to be carried out without much difficulty or expense.

r.   (i) In the women's restroom in Hobby Lobby, the drain pipes under the sinks are not insulated.   (ii) These drain pipes under these sinks are not insulated, as shown in the photograph below, in violation of Federal Law 2010; ADAAG § 606.5.   (iii) Due to the lack of insulation on these pipes under these sinks, the Plaintiff risked skin burns and injury to his legs when he used these sinks.   (iv) The action required to insulate these drain pipes under these sinks is easily accomplishable and able to be carried out without much difficulty or expense.



s.    (i) In the women's restroom in Hobby Lobby, the operation of the controls for the faucets to two of the sinks requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of the controls for these faucets to two of the sinks requires tight grasping, pinching or twisting of the wrist, in violation of Federal Law 2010; ADAAG §§ 606.4 and 309.4.   (iii) The Plaintiff tried but could not operate these faucet controls with a closed fist or loose grip.   (iv) The action required to replace these faucet controls is easily accomplishable and able to be carried out without much difficulty or expense.

t.    (i) In the accessible toilet compartment in the women's restroom in Hobby Lobby, the centerline of the where the toilet paper is dispensed from the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of where the toilet paper is dispensed from this toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the toilet, in violation of Federal Law

2010, ADAAG § 604.7.   (iii) The Plaintiff encountered and observed the location of where toilet paper is dispensed.   The Plaintiff cannot reach toilet paper from this dispenser from a normal sitting position on the toilet.   (iv) The action required to install a dispenser so that the centerline of where the toilet paper is dispensed is between 7 and 9 inches from the front of the toilet is easily accomplishable and able to be carried out without much difficulty or expense.

u.   (i) In the women's restroom in Hobby Lobby, the flush control to the toilet in the accessible toilet compartment is not mounted on the open and wide side of the clear floor space.   (ii) The flush control to this toilet is not mounted on the open and wide side of the clear floor space, in violation of Federal Law 2010; ADAAG § 604.6.   (iii) Due to the location of this flush control, the Plaintiff could not flush this toilet from his wheelchair. (iv) The action required to relocate this flush control is easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) In the women's restroom in Hobby Lobby, the coat hook in the accessible toilet compartment is higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor and is about 57 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff tried but could not use this coat hook to hang up an article of his clothing from his wheelchair due to the height of this coat hook above the floor.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

38.   All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design,

as promulgated by the U.S. Department of Justice.

39.   The discriminatory violations described in paragraph 37 are not an exclusive list of the Defendant's ADA violations.   Plaintiff requires the inspection of the Defendant's places of public accommodation in order to photograph and measure areas to which barriers prevented his access.

40.   The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's store and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

41.   Defendant has discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

42.   Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

43.   Plaintiff is without adequate remedy at law and is suffering irreparable harm.

Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

44.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

45.     Defendant are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

46.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

47.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Property, Hobby Lobby, and the accessible parking spaces, access aisles and walkways along the accessible route to Hobby Lobby to make those facilities readily accessible and useable to the Plaintiff and all other

persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.      The Court issue a Declaratory Judgment that determines that the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates

Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792; Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*